NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0608n.06
Filed: July 19, 2005

No. 04-3119

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JAMES HALL,

     Plaintiff-Appellant,

v.

CONSOLIDATED FREIGHTWAYS
CORPORATION OF DELAWARE,

     Defendant,

LUMBERMEN'S MUTUAL CASUALTY
COMPANY,

     Defendant-Appellee.

On Appeal from the United States District Court for the Northern District of Ohio

_____/

BEFORE:    BOGGS, Chief Judge; RYAN and ROGERS, Circuit Judges.

     RYAN, Circuit Judge.     The plaintiff, James Hall, appeals from a district court order limiting the liability of Lumbermen's Mutual Casualty Company, the surety of a supersedeas bond, to the penal sum of the bond. The supersedeas bond was issued by Lumbermen's Mutual to the defendant, Consolidated Freightways Corporation, following a jury verdict against Consolidated Freightways for discriminating against Hall, its former employee, because of his race. After the jury rendered its decision, the district court granted remittitur with respect to the punitive damages the jury awarded, but the judgment was fully reinstated on appeal. Hall then moved against Lumbermen's Mutual to satisfy the judgment. Under the terms of the supersedeas bond, Lumbermen's Mutual is bound by

any modification of the judgment ordered by the appellate court, but its liability is expressly limited to the penal sum of the bond.  The district court ruled that Lumbermen's Mutual was liable for the penal sum only, that is, the original judgment, but not for the larger judgment as modified on appeal.  For the following reasons, we **AFFIRM**.

## I.

The relevant facts of the case are reported in a previous decision of this court and are only briefly recounted here.  See Hall v. Consol. Freightways Corp., 337 F.3d 669 (6th Cir. 2003).  On November 6, 1998, Hall filed a complaint in the United States District Court for the Northern District of Ohio, alleging that his former employer, Consolidated Freightways, had discriminated against him in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Ohio Revised Code.  Specifically, Hall alleged race discrimination, racially hostile work environment, wrongful termination based on race, and retaliation.  At the end of a 10-day trial, the jury returned a verdict in Hall's favor and awarded him $50,000 in compensatory damages plus $750,000 in punitive damages, for a total award of $800,000.  Consolidated Freightways filed a motion for remittitur, which the district court granted, reducing Hall's punitive damages award from $750,000 to $252,400.  The court also awarded Hall $123,000 in attorney fees and $24,055 in costs.  Both parties appealed.

While the appeals were pending, Consolidated Freightways filed a motion to stay execution of the judgment and, shortly thereafter, submitted a supersedeas bond which it had obtained from Lumbermen's Mutual.  Pursuant to Federal Rule of Civil Procedure 62(d), the district court approved the supersedeas bond and granted Consolidated Freightways's motion to stay execution of the judgment pending the appeals.

The bond provided as follows:

> KNOW ALL MEN BY THESE PRESENTS, that we, Consolidated Freightways Corporation, as Principal, and Lumbermen's Mutual Casualty Company, as Surety, acknowledge by this instrument their obligation to pay Plaintiff James Hall, or his successors, the sum of FOUR HUNDRED FIFTY THOUSAND ONE HUNDRED THIRTY-FIVE AND NO/100 DOLLARS ($450,135.00) in Case No. 98-2554 above.
>
> This bond is filed in accordance with the requirements of the U.S. District Court for the Northern District of Ohio, as security for a stay of execution of judgment pending appeal in the above named action, pursuant to Rule 62(d), Federal Rules of Civil Procedure, and Rule 8, Federal Rules of Appellate Procedure.
>
> Both the Principal and the Surety are bound to satisfy in full the judgment of the District Court in Case No. 98-2554, including costs and interest, if the appeal should be dismissed or the judgment affirmed. Principal and Surety are bound also to satisfy in full any modification of the judgment ordered by the appellate Court. If the judgment should be reversed, then this bond shall be discharged.
>
> Should the Principal, Consolidated Freightways Corporation, satisfy the judgment as described above, all obligations under this bond will be discharged. Should the Principal, Consolidated Freightways Corporation, fail to satisfy the judgment as described above, all obligations under this bond, including the obligation of Lumbermen's Mutual Casualty Company, the Surety, to satisfy the judgment, shall remain in full force and effect. PROVIDED, HOWEVER, that in no event shall the Surety's liability exceed the penal sum of this bond.

Thereafter, this court reversed the district court's ruling reducing the punitive damages award and directed the district court to reinstate the full jury award of $800,000. Hall, 337 F.3d at 680. Hall then moved against the surety, Lumbermen's Mutual, to execute the judgment. The motion was granted by the court in a marginal entry order dated October 28, 2003. Lumbermen's Mutual then moved to vacate the marginal entry order, arguing that its liability under the supersedeas bond did not exceed the penal sum of $450,135 as stated in the bond. The district court granted the motion in part, directing Lumbermen's Mutual to pay Hall the amount of $450,135 forthwith, while establishing a schedule for briefing the remaining amount in dispute. On December 23, 2003, the district

court granted Lumbermen's Mutual's motion to vacate in full, concluding that Lumbermen's Mutual had satisfied its obligation under the bond when it paid the penal sum of $450,135 to Hall. The court reasoned that the bond's modification provision seemed ambiguous, but that the ambiguity was resolved by the bond's final provision limiting the surety's liability to the penal sum. On January 6, 2004, Hall filed a motion for reconsideration of the district court's December 23, 2003, order, which was denied. This appeal followed.

## II.

The supersedeas bond issued by Lumbermen's Mutual was posted pursuant to Federal Rule of Civil Procedure 62(d) and enforced pursuant to Federal Rule of Civil Procedure 65.1. "Because Rule 65.1 simply allows for an enforcement mechanism for bonds posted under Rule 62(d), only a federal question is involved. As such, federal law . . . applies." Bass v. First Pac. Networks, Inc., 219 F.3d 1052, 1055 (9th Cir. 2000).

> For if it be true, and it undoubtedly is, that the giving of . . . a bond was an act done pursuant to an authority exercised under the Constitution and laws of the United States, it must follow that the bond so taken is to be interpreted with reference to the authority under which it was given and the principles of jurisprudence controlling such authority, and not by the local law.

Tullock v. Mulvane, 184 U.S. 497, 512-13 (1902).

There are no applicable federal standards governing the construction of supersedeas bonds, however, so we must "look to state law bond provisions and construction for guidance." United States ex. rel. Miss. Road Supply Co. v. H.R. Morgan, Inc., 542 F.2d 262, 267 (5th Cir. 1976). Under Ohio law, the rules of construction employed to interpret a supersedeas bond, as a surety contract, are the same as those rules utilized to interpret all written agreements. See State ex rel. Herbert v. Inland Bonding Co., 46 N.E.2d 623, 626 (Ohio Ct. App. 1942), overruled on other grounds, 51 N.E.2d 710 (Ohio

1943). Generally, courts presume that the intent of the parties can be found in the written terms of their contract. Shifrin v. Forest City Enters., Inc., 597 N.E.2d 499, 501 (Ohio 1992). If a contract is unambiguous, the language of the contract controls and "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co., 544 N.E.2d 920, 923 (Ohio 1989). Ambiguity in a contract may arise when two contractual provisions are in conflict with each other. See Fairmont Creamery Co. v. Ewing, 182 N.E. 883, 885 (Ohio Ct. App. 1932).

Hall argues that the plain meaning of the bond's modification provision requires that Lumbermen's Mutual be held liable for the balance of the judgment as reinstated on appeal. Lumbermen's Mutual counters that the bond expressly limits its liability to the stated penal sum. We acknowledge that the supersedeas bond arguably contains an ambiguity inasmuch as two provisions of the bond appear to conflict with each other. On the one hand, the bond provides that Lumbermen's Mutual, as surety, is "bound . . . to satisfy in full any modification of the judgment ordered by the appellate Court," which would seem to include the $800,000 judgment reinstated on appeal. On the other hand, the bond expressly provides that under no circumstances will the liability of Lumbermen's Mutual exceed the penal sum, which in this case appears to be the original $450,135 judgment acknowledged in the bond.

The modification provision appears to be a vestige of former Federal Rule of Civil Procedure 73(d), which required that a supersedeas bond "be conditioned . . . to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award." Fed. R. Civ. P. 73(d) (repealed 1968). Although

this rule is no longer good law, Lumbermen's Mutual is nevertheless contractually bound by the "modification of the judgment" language set forth in the supersedeas bond.

In adherence to the principle that contracts should be interpreted so as to give effect to every provision of the contract, Farmers' National Bank v. Delaware Insurance Co., 94 N.E. 834, 839 (Ohio 1911), the district court reasoned that to hold Lumbermen's Mutual liable for the full judgment as reinstated on appeal would render the last provision of the bond ineffectual: "To find in Plaintiff's favor, the Court would have to completely ignore the asserted penal sum and the last sentence . . . of the bond which expressly limits Lumbermen's liability to the penal sum." To avoid this result and to resolve the apparent ambiguity, the court interpreted the bond's apparently conflicting language to mean that Lumbermen's Mutual was liable for any modification of the judgment on appeal, "but in the event that the court of appeals modifies the judgment by increasing the amount above $450,135, Lumbermen's Mutual's liability is limited to the penal sum, i.e., $450,135, and Consolidated will be responsible for the balance." We perceive no error in the court's reasoning.

Hall contends that the district court's interpretation, while salvaging the provision of the bond limiting the surety's liability to the penal sum, simultaneously "'eliminates [the modification provision] from the contract and makes it purposeless and unnecessary.'" (Quoting Farmers' Nat'l Bank, 94 N.E. at 839.) Hall's argument is without merit because it presupposes that the only modification of the judgment contemplated by the parties was a full reinstatement of the original judgment. During its appeal to this court, Consolidated Freightways contended that the evidence in the case did not support an award of punitive damages in any amount, whether under federal or state law. Hall, 337 F.3d at 671. Had

Consolidated Freightways prevailed in only this aspect of its appeal, the judgment would have been remitted to an amount less than the penal sum stated in the bond. The district court's order denying Consolidated Freightways's Rule 50 motion relating to punitive damages would have been reversed, leaving intact the remaining award of damages. Although this would have resulted in a partial reversal of the judgment, Lumbermen's Mutual would still have been bound "to satisfy in full [the] modification of the judgment ordered by the appellate Court."

The district court's interpretation of the bond's terms is also supported by the general rule that a surety's liability is limited to the penal sum stated in the bond. Elliott v. Marc Wilcher Realty, Inc., 171 N.E.2d 543, 547 (Ohio Ct. App. 1959). While nothing prevents parties from contracting for a different result, including increasing a surety's potential liability to cover any increase in the judgment on appeal, the language of the bond does not indicate that such an agreement was reached in this case. Rather, the surety's liability is expressly limited to the penal sum.

Hall argues that the term "penal sum" is itself ambiguous and should be interpreted "to include not just the $450,135 obligation but also 'any modification of judgment ordered by the appellate court.'" We disagree. A natural reading of the language of the bond indicates that the term "penal sum" refers back to the only monetary amount actually specified in the bond, namely, "the sum of . . . []$450,135.00[.]" The term does not include, in addition, any potential increase in the judgment ordered by the appellate court. Indeed, given the purpose a supersedeas bond is intended to serve, the latter construction would arguably provide a windfall to Hall.

The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. At the same time, the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.

Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1190-91 (5th Cir. 1979) (emphasis added).

Hall's interpretation of "penal sum" would not preserve the status quo as it existed when the district court entered its judgment. Rather, Hall's interpretation, while protecting his ability to execute the judgment he obtained in the district court, would also enable him to collect a larger judgment from the surety in the event his appeal was successful. While it would undoubtedly be more convenient for Hall to collect the entire judgment from Lumbermen's Mutual, especially considering that Consolidated Freightways has filed for Chapter 11 bankruptcy protection, a reasonable construction of the bond's language indicates that Lumbermen's Mutual's liability is limited to the $450,135 obligation stated in the bond.

### III.

For the foregoing reasons, the district court's order limiting the liability of Lumbermen's Mutual to the penal sum of the supersedeas bond is **AFFIRMED**.